UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

JAIME TROQUILLE                                CIVIL ACTION

VERSUS                                         NO: 08-0758

DR. JERRY THOMAS ET AL.                        SECTION: "S" (4)

## ORDER AND REASONS

**IT IS HEREBY ORDERED** that Nicholas Crawford's "Motion for Judgment on the Pleadings" is **GRANTED**. (Document #65.)

**IT IS HEREBY ORDERED** that the "Motion for Summary Judgment" of Dr. Jerry Thomas and Sergeant Bruce Stewart is **GRANTED**. (Document #66.)

### I. BACKGROUND

Jamie Dewayne Troquille is a prisoner, who was transferred on November 20, 2006, from the Dixon Correctional Institute (Dixon) to the Rayburn Correctional Center (Rayburn) in Angie, Louisiana. While incarcerated at Dixon in April 2006, Troquille fractured his left ankle playing sports. In June 2006, he underwent surgery which included implanting two screws. When Troquille arrived at Rayburn, he complained of severe pain, numbness, and swelling of his ankle and leg. Dr. Jerry Thomas, the Medical Director, ordered x-rays and issued Troquille a duty

status of "regular with restrictions, compound inside the fence" for one month. On December 21, 2006, Dr. Thomas evaluated Troquille and noted that the x-ray showed that the fracture had healed. Medical records indicate that Troquille had a good range of motion, and there was no swelling. Dr. Thomas placed him on regular duty status. Troquille complained about his ankle several times through October 2007 and had appointments with the doctor, nurse, or an emergency medical technician.

On September 12, 2007, Troquille made a "Self Declared Emergency," complaining of severe pain and numbness in his ankle. After examining Troquille's ankle and finding no evidence of swelling, Sergeant Bruce Stewart, an emergency medical technician, "wrote up" Troquille for malingering under Adult Disciplinary Rule 15(b). After entering a guilty plea, Troquille lost 30 days of good time as punishment for the violation.

On October 14, 2007, Troquille was standing on his toilet cleaning the vent inside his cell when his left ankle allegedly gave way and caused him to fall. Other inmates summoned Sergeant Clifford Turner, who observed Troquille on the floor complaining of pain to his lower back, mouth, head, and left ankle. Troquille was transferred to the infirmary on a stretcher, and Nicholas Crawford, a licensed practical nurse, attended him. Crawford contacted Dr. Thomas, who ordered that x-rays of the lower back be taken the next day. Following Dr. Thomas' orders, Crawford walked Troquille approximately 35 feet to an isolation cell where he spent the night. X-rays of his lower back were taken on October 15, 2007, and Troquille was released from isolation on October 16, 2007. On October 17, 2007, Troquille complained of pain, swelling, and numbness in his left ankle and pain in his lower back. On October 18, 2007, x-rays were

2

taken of his left ankle.

On October 19, 2007, Troquille filed a Request for Administrative Remedy, complaining of his medical treatment. His request was denied on November 27, 2007, because his medical complaints had been handled in a timely and efficient manner. On January 17, 2008, at the second step of the procedure, it was determined that the complaint was without merit because Troquille's medical concerns had been addressed in an appropriate manner.

On October 22, 2007, Dr. Thomas examined Troquille's ankle through the bars of the cell. Dr. Thomas informed Troquille that he would refer Troquille to an orthopedist.

On November 4, 2007, Troquille's ankle "gave out" when he was on his way back to his cell from the shower, and Troquille fell to the floor. He declared himself an emergency, and Nurse Crawford gave him Motrin and Tylenol. Troquille was written up by Crawford for abusing the Self Declared Emergency system. Troquille lost 30 days of good time credit.

Troquille was examined at the Orthopedic Clinic at Earl K. Long Hospital in Baton Rouge, Louisiana, on November 27, 2007. The orthopedist, who found Troquille's ankle bone was well healed, and the hardware was in place, recommended range-of-motion and weight-bearing exercises. Dr. Thomas conducted a follow-up examination on December 4, 2007, and recommended that Troquille continue range-of-motion and weight-bearing exercises.

Troquille filed a *pro se, in forma pauperis* complaint, pursuant to 42 U.S.C § 1983, against Dr. Thomas, Stewart, and Crawford. Troquille alleges that Dr. Thomas violated his Eighth Amendment rights by failing to administer examinations, failing to provide medication, releasing him from isolation when he knew the extent of the injuries, painfully twisting and

poking his ankle, and refusing to examine his lower back. He alleges that Stewart violated his Eighth Amendment right to be free of cruel and unusual punishment by denying him an opportunity to see the doctor, failing to perform examinations, abusing him verbally, and threatening him with disciplinary action. Troquille alleges that Crawford violated his Eighth Amendment right by verbally abusing him, causing him to walk approximately 35 feet to the isolation cell without examining him for injury, and leaving him to sleep on the cold floor all night. Troquille amended the complaint to allege that security officers retaliated against him for filing the civil rights action.

Dr. Thomas, Stewart, and Crawford filed an answer, asserting the defenses of qualified immunity and failure to exhaust administrative remedies. Crawford filed a "Motion for Judgment on the Pleadings," pursuant to Federal Rule of Civil Procedure 12(c), and Dr. Thomas and Stewart file a "Motion for Summary Judgment," pursuant to Rule 56.

## II. DISCUSSION

### A. Rule 12(c) Motion for Judgment on the Pleadings

**1. Legal standard**

"The standard for dismissal under Rule 12(c) is the same as that for dismissal for failure to state a claim under Rule 12(b)(6)." Chauvin v. State Farm & Cas. Co., 495 F.3d 232, 237 (5th Cir. 2007). "To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." In re Katrina Canal Breaches Litigation, 495 F.3d 191, 205 (5th Cir. 2007) (quoting Bell Atlantic v. Twombly, 127 S.Ct. 1955, 1964-65 & 1973 n.14 (2007)). "Factual allegations must be enough to raise a right to relief above the

speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Id. at 1965. The district court may not look beyond the pleadings, but the court may refer to documents attached to the complaint. See Hicks v. Parker, 2009 WL 2762302 (5th Cir. 2009).

### 2. Failure to exhaust administrative remedies

Nurse Crawford contends that Troquille failed to exhaust administrative remedies on the claims that Crawford verbally abused him, caused him to walk approximately 35 feet to the isolation cell without examining him for injury, and left him to sleep on the cold floor all night.

"Under the Prison Litigation Reform Act, inmates must exhaust 'such administrative remedies as are available' prior to bringing a civil action." Hicks v. Parker, 2009 WL 2762302 *1 (citing 42 U.S.C. § 1997e(a)). "Dismissal may be appropriate . . . where the complaint on its face establishes the inmate's failure to exhaust." Id. (citing Carbe v. Lappin, 492 F.3d 325, 328 (5th Cir. 2007). "The purposes of this exhaustion requirement are to give an agency an opportunity to correct its own mistakes with respect to the programs it administers before it is haled into federal court and to allow for claim resolution in proceedings before an agency because it is faster an more economical than litigation in federal court." Bisby v. Garza, 2009 WL 2709326 *2 (5th Cir. 2009) (internal quotation and citation omitted).

Troquille attached a copy of his October 19, 2007, Request for Administrative Remedy to his complaint. There is no allegation that Crawford was deliberately indifferent to his serious medical needs. His only reference to Nurse Crawford is as follows: "As I was being rushed to the infirmary on the stretcher the nurse (Nick Crawford) said, 'You are not hurt so stop all that f.

5

. . g hollering." Accordingly, Troquille has not exhausted his claims that Crawford caused him to walk approximately 35 feet to the isolation cell without examining him for injury, and left him to sleep on the cold floor all night, and the claim is dismissed.

### 3. Exhausted claim of verbal abuse

Troquille alleges that Nurse Crawford verbally abused him in violation of his constitutional rights. To the extent that Troquille exhausted his administrative remedies on the claim, he fails to state a claim of a violation of a clearly established constitutional right. "[M]ere threatening language and gestures of a custodial officer do not, even if true, amount to constitutional violations." McFadden v. Lucas, 713 F.2d 143, 146 (5th Cir. 1983); Bender v. Brumley, 1 F.3d 271, 274 n.4 (5th Cir. 1993). Accordingly, the claim is dismissed.

### 4. Retaliation claim

Troquille alleges that Crawford wrote him up for malingering on November 4, 2007, in retaliation for filed the request for an administrative remedy. Crawford argues that the claim is barred by Heck v. Humphrey, 114 S.Ct. 2364 (1994).

In Heck v. Humphrey, the court held that a prisoner's claim for damages is not cognizable under § 1983 if "a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence," unless the conviction or sentence have been invalidated. 114 S.Ct. at 2372-73. Heck applies in a disciplinary conviction that results in the loss of good-time credits. See Edwards v. Balisok, 117 S.Ct. 1584, 1588 (1997); Thomas v. Stalder, 32 Fed.Appx. 128 (5th Cir. 2002).

Troquille's disciplinary action has not been invalidated, and the claim that the

disciplinary action for malingering was retaliation for pursuing his grievance through the administrative process would, if established, necessarily imply the invalidity of the deprivation of his good-time credits. Accordingly, the retaliation claim is not cognizable under § 1983, and it is dismissed. See Edwards v. Balisok, 117 S.Ct. at 1589.

## B. Motion for summary judgment of Dr. Thomas and Sergeant Stewart

### 1. Legal standard

Summary judgment is proper when, viewing the evidence in the light most favorable to the non-movant, "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Amburgey v. Corhart Refractories Corp., 936 F.2d 805, 809 (5th Cir. 1991); Fed. R. Civ. P. 56(c). If the moving party meets the initial burden of establishing that there is no genuine issue, the burden shifts to the non-moving party to produce evidence of the existence of a genuine issue for trial. Celotex Corp. v. Catrett, 106 S.Ct. 2548, 2552 (1986). The nonmovant cannot satisfy the summary judgment burden with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence. Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc).

### 2. Eighth Amendment claim

Dr. Thomas and Sergeant Stewart seek summary judgment on Troquille's claim that medical personnel were deliberately indifferent to his serious medical needs in violation of the Eighth Amendment. They contend that the treatment provided to Troquille was extensive and appropriate under the circumstances. Alternatively, Dr. Thomas and Sergeant Stewart assert the doctrine of qualified immunity.

"The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Pearson v. Callahan, 129 S.Ct. 808, 815 (2009) (internal quotation and citation omitted). "Qualified immunity balances two important interests–the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." Id. "Because qualified immunity is an immunity from suit rather than a mere defense to liability . . . it is effectively lost if a case is erroneously permitted to go to trial." Id. (internal quotation and citation omitted).

The two step analysis of Saucier v. Katz, 121 S.Ct. 2151, 2156 (2001) provides guidance in resolving government officials qualified immunity claims:

> First, a court must decide whether the facts that a plaintiff has alleged (see Fed. Rules Civ. Proc 12(b)(6), (c)) or shown (see Rules 50, 56) make out a violation of a constitutional right.
> Second, if the plaintiff has satisfied this first step, the court must decide whether the right at issue was "clearly established" at the time of defendant's alleged misconduct.

Pearson v. Callahan, 129 S.Ct. 808, 815-816 (2009). "Qualified immunity is applicable unless the official's conduct violated a clearly established constitutional right." Id. at 816. The sequence of Saucier is not mandatory, and courts may exercise discretion in deciding which of the two prongs should be addressed first. Id. at 818.

In order to show an Eighth Amendment violation in the medical sense, a prisoner must prove that prison officials were deliberately indifferent to his serious medical needs constituting

8

unnecessary and wanton infliction of pain. Estelle v. Gamble, 97 S.Ct. 285, 291 (1976). A prison official acts with deliberate indifference "only if he knows that inmates face a substantial risk of serious harm and . . . disregards that risk by failing to take reasonable measures to abate it." Farmer v. Brennan, 114 S. Ct. 1970, 1984 (1994); Reeves v. Collins, 27 F.3d 174, 176-77 (5th Cir. 1994).

Dr. Thomas evaluated Troquille when he arrived at Rayburn, in November 2006, and followed up with x-rays and an appointment to be certain the fracture had healed. Troquille did not complain about ankle pain until July 10, 2007. Stewart referred him to Dr. Thomas, who evaluated the ankle on August 7, 2007. There was no swelling, and Troquille's range of motion was good. Troquille returned to see Stewart on August 28, 2007, with complaints of ankle pain, but Stewart observed no swelling and noted no objective findings.

Troquille complained again on September 12, 2007, but there was no evidence or swelling or any need for treatment. Stewart had observed on the video camera that Troquille had been rubbing his ankle, and told him to stop because he was causing redness. Stewart charged Troquille with malingering, and Troquille pleaded guilty to the disciplinary charge.

On October 14, 2007, Troquille went to sick call complaining of pain in his ankle. The nurse referred him to an appointment with Dr. Thomas on October 30, 2007. Troquille made a second sick call on the evening of October 14, 2007, reporting that he had hurt his ankle and back when he fell in his cell. Troquille was admitted to the infirmary observation ward and ordered on bed rest. Dr. Thomas monitored Troquille's progress by telephone and discharged him on October 16, 2007. Troquille returned to sick call on October 17, 2007. The nurse noted

slight swelling, instructed him to elevate his foot, ordered an x-ray, and noted his scheduled appointment with Dr. Thomas on October 30, 2007. Troquille saw Stewart on October 22, 2007, but there was no sign of stress, swelling, or redness. Dr. Thomas evaluated Troquille on October 23, 2007, and found no swelling or other symptoms. Because of the persistent complaints of pain, Dr. Thomas referred him to an orthopedic clinic and arranged for an appointment November 27, 2007. Prior to his hospital appointment, Troquille went to sick call on November 4, 2007, and November 13, 2007.

On December 4, 2007, Dr. Thomas informed Troquille that the chronic issue regarding his left ankle had been address by the orthopedist, who recommended exercises. There were no other complaints for two months.

On February 19, 2008, March 3, 2008, March 5, 2008, March 25, 2008, April 8, 2008, August 11, 2008, September 4, 2008, September 9, 2008, September 18, 2008, and September 25, 2008, Troquille was examined by either a nurse or a doctor at Rayburn and medication for pain was prescribed. On April 23, 2008, he received an ankle brace. When Troquille needed a new ankle brace, one was provided on October 14, 2008.

The medical evidence does not support Troquille's claim that Dr. Thomas and Sergeant Stewart violated clearly established law. Dr. Thomas and Sergeant Stewart took extensive measures to abate any risk or harm to Troquille. There are no disputed issues of material fact that Dr. Thomas and Sergeant Stewart provided Troquille with medical care, and they were not deliberately indifferent to Troquille's serious medical needs. Accordingly, Dr. Thomas and Sergeant Stewart are entitled to qualified immunity, and the motion for summary judgment

dismissing the claims is granted.

### 3. Retaliation claim

To the extent that Troquille has alleged a claim against Dr. Thomas or Sergeant Stewart for retaliation, the claim is not cognizable under § 1983 for the reasons stated in the discussion of the retaliation claim against Nurse Crawford.

New Orleans, Louisiana, this 25 day of September, 2009.

**MARY ANN VIAL LEMMON**
**UNITED STATES DISTRICT JUDGE**